# Exhibit B

2016-49113 / Court: 189

7/26/2016 7:24:11 AM
Chris Daniel - District Clerk Harris County
Envelope No. 11818747
By: Nelson Cuero
Filed: 7/26/2016 7:24:11 AM

CAUSE NO. _____

| | | |
|---|---|---|
| EVA S. ENGELHART, CHAPTER 7 TRUSTEE FOR THE ESTATE OF SUN BELT COMMODITIES, INC. | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § § | |
| V. | § § | HARRIS COUNTY, TEXAS |
| ZURICH AMERICAN INSURANCE, CO. | § § § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Eva S. Engelhart, Chapter 7 Trustee for the Estate of Sun Belt Commodities, Inc. ("Plaintiff" or the "Trustee") files this Original Petition against Zurich American Insurance Co. (the "Defendant"), and would respectfully show the Court the following:

### I.

### DISCOVERY CONTROL PLAN

1. Plaintiff requests that Discovery Control Plan II, pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.4, be implemented.

### II.

### PARTIES

2. Plaintiff is the Chapter 7 Trustee for the bankruptcy estate of Sun Belt Commodities, Inc. Plaintiff is represented by Timothy M. McCloskey and Thomas Andrew Woolley, III, Carrigan, McCloskey & Roberson, LLP, 945 Heights Boulevard, Houston, Texas 77008.

1

3. Defendant, Zurich American Insurance, Co. is a New York corporation whose principal office is located at 1400 American Ln., Schaumburg, IL 60196. Defendant may be served with process by serving its registered agent for service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### III.

### VENUE

4. Venue is proper in this county pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §15.001 because all or part of Plaintiff's cause of action accrued in Harris County, Texas. Plaintiff contracted with Defendant for various insurance policies and at all times, Defendant knew that Plaintiff was based in Harris County, Texas. The Court has jurisdiction over this matter as its damages are within the jurisdictional limits of this Court.

### IV.

### FACTUAL BACKGROUND

**A.  Sun Belt and its Insurance Policies with Defendant**

5. Since 1986, Sun Belt Commodities, Inc. ("Sun Belt") operated a specialized wholesale food procurement and delivery service in and around Harris County, Texas. The primary business of the Debtor was the warehousing and timely delivery of food to various customers, e.g., supermarkets, restaurants, schools, hospitals, and prisons.

6. Beginning in 1995, Sun Belt operated from two warehouses located approximately two miles from Houston's central business district at 4802 Gulf Freeway, Houston, Texas. The larger warehouse had over 40,000 square feet of insulated and refrigerated space. The smaller warehouse had 7,500 square feet of freezer space for the storage of seafood, meat, grocery and

produce. Both buildings were operated with computerized remote control systems that monitored changes in temperature.

7. Sun Belt sought to obtain comprehensive insurance coverage, including commercial property coverage and business income coverage, to protect its operations.

8. In or about 2007, with the assistance of its broker, Insgroup, Inc., Sun Belt entered into various package, worker's compensation, and umbrella policies with Defendant. One of the policies issued to Sun Belt by Defendant was Policy No. CPO 3994718-01 that provided a coverage period from December 20, 2007 to December 20, 2008 (the "Policy"). Sun Belt paid premiums of almost $100,000.00 for the Policy.

9. The Policy provided property portfolio protection, general liability, and automobile protection to Sun Belt. Notably, the property portfolio protection also included business income coverage and extra expense coverage. The business income coverage provided a limit of insurance of $5,000,000.00 and insured Sun Belt from an actual loss of "**business income**" that was sustained due to "**suspension**" of the Debtor's "**operations**" during the "**period of restoration**" or "**extended period of indemnity**."[1]

**B.**   **Hurricane Ike and its Damage to Sun Belt**

10. On September 13, 2008, Hurricane Ike made landfall in Galveston, Texas and caused devastating damage in Galveston and Harris County, Texas.

11. Sun Belt's refrigeration equipment suffered extensive damage from effects of Hurricane Ike. Sun Belt's refrigerated warehouses were controlled by more than 30 cooling units, and all of the units sustained some storm damage from Hurricane Ike that was the result of heavy wind, rain and/or power surges. Several of the units had contaminated oil and many

---

[1] All terms in bold shall have the meaning ascribed to them in the Policy.

others showed signs of heavy damage to the internal electronic components of the units after the covers blew off the units.

12.     Sun Belt's operations were completely stopped in the days and weeks after Hurricane Ike.

**C.      The Claim under the Policy and Damage to Sun Belt**

13.     Sun Belt immediately notified Defendant of its claims under the Policy. Sun Belt obtained the review of a third party for the damage to their refrigeration equipment. The recommendation was that all 32 of the cooling units needed to be replaced because of the extensive damage caused by Hurricane Ike. The equipment that needed to be replaced included both the condensing units (e.g., compressors) and evaporator coils of the cooling units.

14.     Despite having a recommendation from a professional hired by Defendant and knowing Sun Belt's equipment needed to be replaced, Defendant opted only for repairs to the units. After several years of attempted yet unsuccessful repairs to the cooling units, Defendant finally decided to replace the condensing units, but still refused to replace the evaporator coils. This decision was made despite multiple expert third party reports that concluded the evaporator coils should be replaced at the same time as the condensing units. Even after the condensing units were replaced, Sun Belt continued to have problems with consistent refrigeration. In 2012, Sun Belt received a report from the company that had replaced the condensing units that highlighted the error in the repair strategy: "[as] stated in our original report [] the evaporator coils should have also been replaced when the condensing units were changed out…[and] changing only the condensing units did not repair the systems to the fully functioning condition they were in prior to the storm damage."

4

15. The operational impact to Sun Belt was devastating. Sun Belt's refrigeration system never properly worked after Hurricane Ike. Sun Belt had difficulty maintaining consistent temperatures, which damaged and destroyed sensitive produce and inventory. When the spoiled product was not removed fast enough, mold and mildew appeared, which caused Sun Belt to incur expenses to clean the coolers. Sun Belt had to regularly move product from one cooler to another because the cooling units were only working sporadically. Because of the regular and sometimes complete failure of the cooling units, Sun Belt lost a significant portion of its refrigeration capacity. This dramatically impacted Sun Belt because it could no longer operate with the same margins that it did prior to Hurricane Ike.

16. The financial impact of Hurricane Ike and the resulting delays in repair to the cooling units were equally devastating as Sun Belt saw its revenues drop by 25% after Hurricane Ike. Despite the best efforts by management, the damage could not be undone and Sun Belt filed bankruptcy in November 2014.

17. Up until the bankruptcy filing, Sun Belt continued its persistent efforts to recover the loss of business income under the Policy from Defendant and worked with Defendant's consultant to assess the claim, but all to no avail. This is despite the fact that Sun Belt gave Defendant and its consultant virtually unfettered access to its business and books and records. Sun Belt provided more than 100,000 pages of information to the Defendant and complete access to its accounting systems to access any information it requested. Sun Belt made its employees available to Defendant for interviews and follow-up questions. Despite all of the information provided and effort expended, the Defendant took the position that Sun Belt's claim could not be accurately measured and refused to pay.

## V.

## CAUSES OF ACTION

A. <u>Violations of Chapter 542 of the Texas Insurance Code</u>

18. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 17 as if the same were set forth more fully and at length herein.

19. Violations of Chapter 542 of the Texas Insurance Code include failing to timely acknowledge, investigate, or request claim information; failing to accept, reject or extend time to decide the claim; failing to promptly pay a claim; or delaying payment of a claim which exceeds a period specified under Chapter 542.

20. The Defendant violated multiple sections of Chapter 542, *et seq.* of the Texas Insurance Code, including but not limited to Sections 542.055; 542.06; 542.057; 542.058; and 542.060.

21. Defendant has had sufficient information available to evaluate and pay Sun Belt's claim under the Policy. By failing to acknowledge, commence investigation, request information and timely pay the claim, the Defendant has committed multiple violation of Chapter 542. The actions of the Defendant were a producing cause of damages suffered by Sun Belt.

B. <u>Common Law Bad Faith</u>

22. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 17 as if the same were set forth more fully and at length herein.

23. The Plaintiff and Defendant were obligated by the duty of good faith and fair dealing under the Policy.

6

24. Defendant breached its independent duty of good faith and fair dealing when it delayed payment of a covered claim when liability under the Policy was reasonably clear. The bad faith of the Defendant proximately caused injury to Plaintiff, which resulted in damages.

C. **Breach of Contract**

25. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 17 as if the same were set forth more fully and at length herein.

26. Plaintiff and the Defendant entered into a valid and enforceable written contract for insurance coverage (the Policy). The Policy stated that in exchange for premium payments, the Defendant would provide insurance for business income and extra expenses in the amount up to $5,000,000.00.

27. Plaintiff fully performed its contractual obligations by payment of the premiums and by timely and properly submitting the claim for business incomed and extra expense under the Policy.

28. Defendant materially breached the Policy by delaying evaluation of the Claim and failing to pay the claims covered by the Policy. Defendant's breach of the Policy caused injury to Plaintiff, which resulted in significant damages.

VI.

ATTORNEYS' FEES

29. Pursuant to 38.001 et seq. TEXAS CIVIL PRACTICES & REMEDIES CODE, Plaintiff is entitled to its reasonable and necessary attorneys' fees for prosecution of this case. All conditions precedent for the recovery of Plaintiff's damages have been satisfied.

7

## VII.

### STATEMENT OF DAMAGES

30. Pursuant to Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff has sustained damages in excess of $1,000,000.00.

## VIII.

### JURY DEMAND

31. Plaintiff respectfully requests that it be allowed to try this case before a jury. Plaintiff tenders the appropriate fee with this petition.

## IX.

### REQUEST FOR DISCLOSURES

32. Under TEXAS RULE OF CIVIL PROCEDURE 194, Plaintiff requests that Defendant disclose, within 50 days of the service of this request, the information or material described in Rule 194.2(a) through 194.2(l).

### PRAYER

Plaintiff requests that Defendant be cited to appear and answer as required by law, and that upon final trial hereof, Plaintiff recover of and from Defendant:

a. All direct, consequential, and special damages;

b. All interest provided by statute;

c. All equitable relief to which it may be entitled;

d. Pre-judgment interest;

e. Exemplary damages;

f. Attorneys' fees and legal expenses;

8

g. Post-Judgment Interest; and

h. Costs of Court.

Plaintiff further requests any such other relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

DATED: July 25, 2016

Respectfully submitted,

**CARRIGAN, McCLOSKEY & ROBERSON, L.L.P.**

By: /s/Thomas A. Woolley, III
    Timothy M. McCloskey
    SBOT: 13417650
    tmccloskey@cmrllp.com
    Thomas A. Woolley, III
    SBOT: 24042193
    rwoolley@cmrllp.com
    945 Heights Boulevard
    Houston, Texas 77008
    713-868-5581
    713-868-1275 (fax)

**ATTORNEYS FOR PLAINTIFF**